**In re Randy S. LANIER, Phyllis L. Lanier, Debtors.**

**No. 06–02794–8–RDD.**

United States Bankruptcy Court, E.D. North Carolina, Wilson Division.

Feb. 29, 2008.

Craig I. Bryant, P.A., Goldsboro, NC, for Debtors.

## ORDER DENYING MOTION TO APPROVE COMPROMISE

RANDY D. DOUB, Bankruptcy Judge.

This matter is before the court on the trustee's motion to approve compromise in the adversary proceeding filed by him against the debtor, Randy S. Lanier. A hearing was held in Greenville, North Carolina on February 27, 2008.

Randy S. Lanier and Phyllis L. Lanier filed a petition for relief pursuant to chapter 7 of the Bankruptcy Code on September 8, 2006. On April 27, 2007, the trustee initiated an adversary proceeding against Randy S. Lanier by filing a complaint objecting to his discharge pursuant to 11 U.S.C. §§ 727(a)(3), (a)(2)(B), (a)(5), and (a)(7). On January 3, 2008, the trustee filed the motion to compromise, which would allow the debtor to receive a discharge after the payment of $36,000.00 in equal quarterly installments of $3,000.00, beginning on April 15, 2008. The motion also provided that if the debtor was more than 20 days delinquent in making any quarterly installment, the debtor's discharge would be denied. Several objec-

tions to the motion to compromise were filed by creditors of the debtor.[1]

At the hearing, the trustee explained that he originally filed the adversary proceeding against the debtor after conducting a 2004 examination of him which revealed that there was unusual activity which had occurred with regard to his bank account within the year prior to his filing bankruptcy. The trustee discovered that there was no delineation between the debtor's personal bank accounts and the bank accounts of the debtor's corporation, Tropical Pools. Further, the debtor had taken several trips to Russia, Paris and Rome during the year prior to filing. Finally, the North Carolina Department of Revenue had garnished the debtor's accounts just prior to his filing bankruptcy. The trustee also found that there was no money or assets available in the debtor's estate to make payments to creditors. Based upon all of this information, in addition to the claims of fraud posed by the various creditors of Tropical Pools, the trustee determined that the debtor should not be allowed a discharge under the Bankruptcy Code.

The trustee explained that, although he did not believe that debtors should be allowed to buy a discharge, in this particular case, the trustee had determined that the settlement of the adversary proceeding was the only means of providing a return for creditors. In further support of his argument for allowing the compromise, the trustee proffered that the debtor is judgment proof, the parameters of the compromise provide for the debtor's discharge to be denied if he is ever more than 20 days late on a payment to the trustee, and the various creditors who are objecting to the compromise had the opportunity to file an adversary proceeding against the debtor objecting to the dischargeability of the debt owed to them, but had not done so.

Upon questioning by the court, the trustee indicated that the debtor had lost a boat and a sport utility vehicle in Mexico because of a medical emergency which required him to return to the United States without them. When a friend of the debtor's returned to Mexico to retrieve them, they were totaled in an accident. The trustee admitted that, although he had not been presented with proof of these allegations, he had failed to investigate further as the property was security for a lien with GMAC, and there was no equity in the property. Upon further questioning by the court regarding the claims filed in the case and the priority of those claims, the trustee indicated that he was not sure of the amount of any priority claims held by the North Carolina Department of Revenue, as it had already garnished the debtor's accounts. The trustee also indicated that he had not sent out a notice to file claims in the case as he was trying to handle the case as efficiently as possible.

Counsel for the debtor also requested that the court approve the motion to compromise. He indicated that the debtor believed he had some defenses to the trustee's action, which could have resulted in a successful outcome at trial. He further stated that the amounts in dispute, upon which the trustee's action was based, were less than the $36,000.00 to be paid by the debtor under the terms of the compromise. In addition, counsel for the debtor argued that a large amount of the debtor's unsecured debt was dependent upon the unsecured creditors successfully pursuing a

---

1. Objections were filed by Carolyn Ceasar, who has a judgment against the debtor in the amount of $5,000.00, James Hartman, who is listed in the petition as having a claim of $3,000.00, and Mary Ann Olsen and Raymond E. Luce, who claim they are owed $7,000.00 by the debtor for defective work.

piercing of the corporate veil, as the debts arose from the debtor's corporation. Counsel explained that the debtor has a strong incentive to make all the payments, as his discharge will be automatically denied if he is more than 20 days late with any payment required.

Mr. James Hartman, a creditor listed in the debtor's Schedule F, indicated that he and the debtor entered into a contract in December 2005 for the installation of an above-ground pool at Mr. Hartman's residence. The contract required payment by Mr. Hartman of $4,999.00, with a downpayment of $3,000.00. Mr. Hartman mailed a money order in the amount of $3,000.00 to the debtor, which was cashed three days after receipt. However, the debtor never returned to install Mr. Hartman's pool. Mr. Hartman contacted the debtor on numerous occasions, but the debtor did not respond. Mr. Hartman indicated that the debtor was scheduled to appear in Chowan County Superior Court on June 9, 2008 on criminal charges related to this incident.[2]

In response to Mr. Hartman's arguments, counsel for the debtor indicated that nothing would prohibit the various creditors from pursuing criminal actions against the debtor, although it was his belief that the debtor's actions were not fraudulent, as he was unable to complete the projects or refund the money of the creditors because of the garnishment by the North Carolina Department of Revenue.

**2.** The court takes judicial notice of *Capparelli v. Lanier* (Adversary Proceeding No. 06–00253–8–RDD–AP) and *Driscoll v. Lanier* (Adversary Proceeding No. 06–00264–8–RDD–AP). The latter case was dismissed for the plaintiffs' failure to file an amended complaint as required by the court's order of April 11, 2007. Part of their decision to not pursue

The court finds that the parties have proposed a settlement of the adversary proceeding filed by the trustee against the debtor, Randy S. Lanier, in Adversary Proceeding No. 07–00029–8–RDD–AP. The terms of the settlement provide that the debtor pay $36,000.00 to the trustee in quarterly installments of $3,000.00 each beginning on April 15, 2008, and ending on January 15, 2011. Based on the allegations in the complaint, the court finds that there is prima facie evidence that the debtor's discharge could be denied pursuant to 11 U.S.C. § 727(a)(3), which provides for a denial of discharge if

> the debtor has concealed, destroyed, mutilated, falsified, or failed to keep or preserve any recorded information, including books, documents, records, and papers, from which the debtor's financial condition or business transactions might be ascertained, unless such act or failure to act was justified under all of the circumstances of the case.

The debtor failed to maintain his personal business records and his corporate business records in such a manner that there was no commingling of assets. In the complaint, the trustee alleges:

> 5. That the Debtor testified that he did not delineate any difference between his personal bank account and the corporate accounts, and if [sic] fact used each account for corporate and personal purposes with no regard for segregation of funds.

In his answer, the debtor states in response:

> the adversary proceeding was because they could not afford counsel and because of the trustee's pending adversary proceeding to deny the debtor's discharge.
>
> Capparelli alleged a nondischargeable claim in the amount of $21,611.00. Driscoll alleged a nondischargeable claim in the amount of $26,500.00.

5. With respect to the allegations of paragraph 5 of the Complaint, it is admitted that the Defendant did pay certain personal expenses from his corporate account and did, on occasion fail to segregate his personal and business account. Such failures were not with the intent to defraud and were not done at the time the Defendant intended to file bankruptcy. Except as herein admitted, the allegation of paragraph 5 on the Complaint are denied.

In addition, in the debtor's answer to the trustee's complaint, the debtor admits that "he testified that he sent money to his mistress, a Russian, for purposes of helping her acquire air transportation and other needs to meet him in Paris and Rome." Plaintiff's Complaint ¶ 7; Debtor's Answer ¶ 7. The debtor also admits that he "sent money to his Russian mistress for English lessons and travel expenses from his business account within 6 months of filing his case." Plaintiff's Complaint ¶ 8; Debtor's Answer ¶ 8.

In the complaint, the trustee alleges:

9. The Defendant testified that once his bookkeeper left his company, he did not adequately maintain the company records, and that he had no support for many of the questionable transactions on his bank statements.

In his answer, the debtor responds:

9. With respect to the allegations of paragraph 9 of the Plaintiff's Complaint, it is admitted that the Defendant's bookkeeper left the company and the defendant was not able to safeguard the corporate records as a result thereof. Except as herein admitted, the allegations of Paragraph 9 are denied.

In the complaint, the trustee alleges:

10. The Defendant testified that he would pay his subcontractors by meeting them at the bank, withdrawing the funds requested by the subcontractor, and either paying them in cash, or by cashier's check.

In his answer, the debtor states:

10. With respect to the allegations of paragraph 10 of the Plaintiff's Complaint, it is admitted that on occasion the Defendant met certain contractors at the bank and paid them in cash. Except as herein admitted, the allegations of paragraph 10 are denied.

In addition to this admission, the debtor further admitted to being "unable to produce any invoices from subcontractors to substantiate the counter withdrawals referenced in the bank statements." Plaintiff's Complaint ¶ 11; Debtors Answer ¶ 11.

Finally, the trustee alleges in his complaint that "[t]here are also numerous cash withdrawals that the Defendant testified went to his son, but no supporting documentation establishing the purpose of the transfers was provided." Plaintiff's Complaint ¶ 13. In response, the debtor states:

With respect to the allegations of paragraph 13 of the Plaintiff's Complaint, it is admitted that the Defendant's son was paid on several transactions as a result of the work performed for the Defendant's corporation. Except as herein admitted, the allegation [sic] of paragraph 13 are denied.

Debtor's Answer ¶ 13.

Further there is prima facie evidence that the debtor's discharge could be denied pursuant to 11 U.S.C. § 727(a)(2)(B), which provides for a denial of discharge if:

the debtor, with intent to hinder, delay, or defraud a creditor or an officer of the estate charge with custody of property under this title, has transferred, removed, destroyed, mutilated, or concealed, or has permitted to be trans-

ferred, removed destroyed, mutilated or concealed—

.     .     .     .     .

(B) property of the estate, after the date of the filing of the petition.

There is evidence to suggest that the debtor concealed the location of a sport utility vehicle and boat, which would be property of the estate.

Finally, there is prima facie evidence that the debtor's discharge could be denied pursuant to 11 U.S.C. § 727(a)(5), which provides for a denial of discharge if "the debtor has failed to explain satisfactorily, before determination of denial of discharge under this paragraph, any loss of assets or deficiency of assets to meet the debtor's liabilities."

The court further finds that the unsecured liability of the debtor as listed in the debtor's petition is approximately $779,819.00, some of which arises from alleged corporate debts. Sufficient facts exist to support an action by creditors to pierce the corporate veil of Tropical Pools as the alter ego of the debtor. In addition, the debtor has potential tax liabilities in the amount of $23,411.00 to the North Carolina Department of Revenue, $3,000.00 to the Internal Revenue Service, and $2,409.00 to the Wayne County Tax Collector, as listed in the debtor's petition. Because of these potential tax claims, trustee commissions and reasonable attorney's fees, which would have priority over the claims of the unsecured creditors, it is likely that the unsecured creditors may receive no distribution from this settlement. Consumer creditors who placed deposits of money with the debtor, would be limited to a priority claim pursuant to 11 U.S.C. § 507(a)(7) in the amount of $2,225.00, with the balance of any claim being unsecured.

As recognized by *In re Martin,* 91 F.3d 389, 393 (3d Cir.1996), the factors which should be considered in determining whether a settlement in bankruptcy court should be approved include:

(1) the probability of success in litigation; (2) the likely difficulties in collection; (3) the complexity of the litigation involved, and the expense, inconvenience and delay necessarily attending it; and (4) the paramount interest of the creditors.

(citing *Protective Committee for Independent Stockholders of TMT Trailer Ferry, Inc. v. Anderson,* 390 U.S. 414, 424–425, 88 S.Ct. 1157, 1163–64, 20 L.Ed.2d 1 (1968)). The facts alleged by the trustee, combined with the admissions of the defendant, demonstrate that the likelihood of the trustee prevailing in his action to deny the debtor's discharge is strong. While there may be a circumstance where a debtor can purchase his discharge and the best interests of creditors would be served, this is not the case. If this settlement were approved, under the best circumstances, there is little guarantee of any significant return to unsecured creditors. Where a debtor engages in activity that supports a denial of the discharge, the integrity of the bankruptcy system and the confidence of the public in our bankruptcy courts, will suffer irreparable harm, by allowing a dishonest debtor to purchase his discharge with a sum that would provide little or no return to creditors. As stated in one of the objections to the settlement,

Bankruptcy relief should be granted to those who, despite best efforts to avoid situations of economic failure, fall into circumstances resulting in such a need and not for a businessman who willfully and with knowledge of its protections set out to take people for as much as possible before he is caught.

Response to Motion to Approve Compromise filed by Mary Ann Olsen, Raymond E. Luce.

Based on the foregoing, the court finds that this motion to approve compromise is not in the best interests of the estate or in the best interests of the creditors, and therefore the motion is **DENIED.**

**SO ORDERED.**